1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff

v.

EDWARD DEANDRE LOCKE,

Defendant.

NO.  CR18-132RAJ

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C.
§ 3582(c)(1)(A)**

## INTRODUCTION

The United States of America, by Brian T. Moran, United States Attorney for the Western District of Washington and  Vincent T. Lombardi, Assistant United States Attorney for said district, files this memorandum in response to defendant Edward Deandre Locke's motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 774.  Defendant seeks a compassionate release based on his fear that he will contract COVID-19 while in custody.

Defendant's motion should be denied for two reasons.  First, Defendant's fear of contracting COVID-19, while understandable, is wholly speculative.  Defendant is currently housed at the Sea-Tac Federal Detention Center (FDC Sea-Tac) where, as yet, no one has tested positive for the virus.   The Bureau of Prisons (BOP) is taking extraordinary steps to keep it that way, including rapid testing of all prospective detainees at the facility.

Second, Defendant's early release, after merely a few months into his 62-month sentence, is inconsistent with the factors set forth at 18 U.S.C. § 3553(a). Defendant was convicted for his actions as an armed drug dealer with an extensive and serious criminal

history, including prior drug and assault convictions. Premature release based on the mere fear that Defendant might contract COVID-19 will result in Defendant serving a new and much shorter sentence – a sentence that no longer reflects the seriousness of the offense, no longer imposes "just punishment," no longer protects the public, and instead results in unwarranted sentencing disparities when compared to other defendants in this matter.

FACTUAL BACKGROUND

**A.    Underlying Offense Conduct**

      *1.    Defendant's Role in the Conspiracy – Armed Redistributor*

This Court is already familiar with the basic facts regarding the underlying federal investigation of the Drug Trafficking Organization (DTO) headed by lead defendants Michael Morgan and Charles Cheatham. The investigation ultimately led to the use of court-authorized Title III wire intercepts. In total, agents received authorization to intercept fourteen separate target telephones, with interceptions occurring between September 2017 and March 2018.

The wiretaps and other investigative techniques revealed a massive conspiracy to distribute large amounts of cocaine and heroin, as well as smaller but still significant amounts of prescription opiates, methamphetamine, and marijuana. Agents seized more than seven kilograms of heroin, multiple kilograms of cocaine, and several pounds of methamphetamine during the investigation. In addition to drug distribution, members of the conspiracy were intercepted discussing firearms as well as past violent acts. A number of firearms were seized during the investigation as well.

More than 100 search warrants were executed at the time of the co-conspirators arrests on June 6, 2018, resulting in the further seizures of a large amount of different drugs, as well as numerous firearms, and large amounts of U.S. currency. *See* PSR ¶¶ 48-51.

Defendant Locke's role in the organization was an armed redistributor of drugs who obtained them from other members of the conspiracy. He was heard on multiple intercepted calls discussing his efforts to obtain and resell various controlled substances, including cocaine, heroin, oxycodone pills, and counterfeit opiate pills containing fentanyl.

Government's Response to Motion
For Compassionate Release - 2
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Of equal concern, he discussed being armed in conjunction with his drug trafficking activities.

For example, on November 17, 2017, numerous calls in which the defendant was a party were intercepted. On that day, he arranged to purchase a controlled substance, which he referenced as "clear" (likely methamphetamine), from a woman who has not been identified. The defendant mentioned he was at a pub in Renton. When police arrived at that location to conduct surveillance, they saw the defendant's car parked on the street near the pub. While the defendant was waiting for further communication from the woman, he called a man who has also not been identified. He told that man not to drive away in the defendant's car, because he had his gun and pills in the car. The man responded that he had just driven the car around the corner so he could smoke marijuana. A short time later, the defendant returned to his car and drove away. Later that evening, he had another call with the woman, and they agreed he would buy a "quarter" of "clear" and a "quarter" of "powder" from her, referencing a quarter ounce (7 grams) of methamphetamine and cocaine, respectively. The two later met to conclude the deal.

On June 6, 2018, the defendant arrived during the execution of the search warrant on his home. PSR ¶ 54; Dkt. 507, ¶ 8(f). When he arrived, he was carrying a loaded, stolen Glock pistol as well as cocaine, hydrocodone, oxycodone, and fentanyl. PSR ¶ 54; Dkt. 507, ¶ 8(f). Police found another loaded pistol—a Beretta—as well as ammunition, more oxycodone pills, cash and several cell phones in his apartment. PSR ¶ 56; Dkt. 507, ¶ 8(h). Search warrants executed on these phones revealed numerous text messages between the defendant, co-defendant Lovell Brown, and a variety of customers. These messages make clear that Brown served as the defendant's source of supply for at least opioid pills. The messages also show that the defendant was a prolific seller of at least pills, powder cocaine, crack cocaine, and heroin throughout the period from the first interception of his phone in November 2017 until his arrest in June 2018.

Government's Response to Motion
For Compassionate Release - 3
*U.S. v. Locke*, CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### 2.      Defendant's History and Characteristics

Defendant is 45 years of age.  In the presentence report, the Probation Office determined his Criminal History Category to be IV.  His prior convictions included assault with a firearm, forgery, drug trafficking, and burglary among others.  Of his 15 prior convictions, three were assaults, and another four represented a direct threat to the safety of the community through harassment, reckless driving, and driving under the influence. This history of constant criminality does not include 11 arrests that did not result in convictions, or seven additional driving offenses.  Additionally, the defendant has repeatedly been placed on supervision, and has regularly failed to comply—by committing new offenses, failing to appear in court, and other violations. Of note, because of age, a number of his convictions were not included in his criminal history score.  The defendant's criminal history was among the most aggravated of all the co-defendants in this case.

Defendant recounted a chaotic upbringing featuring substance abuse and domestic violence.  At the time of sentencing, he was evidently 5'11," weighed 270 pounds, and complained of poor health.

## B.   Procedural History

As noted above, Defendant was arrested on June 6, 2020, in possession of a firearm and drugs.  He was released on bond, and evidently had satisfactory performance while on pretrial release.  He pleaded guilty on May 29, 2019 to conspiracy to distribute controlled substances and to carrying a firearm during that crime.  Dkt. 507.  He was finally sentenced on November 22, 2019, to 62 months in prison.  Dkt. 708.  Of note, the Court ordered that his self-surrender date be extended past December 29, 2019.  It is unclear from the record the exact date on which Defendant actually started serving his sentence – the first post-sentencing medical records appears to be from January 2, 2020 – but assuming his term began around that date, he has served no more than five months of that 62-month sentence. He is currently serving that sentence at FDC Sea-Tac.

Government's Response to Motion
For Compassionate Release - 4
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## C.     Current Health Issues

Defendant does have various health problems that all appear to be manageable.  He is now apparently 277 pounds, with a Body Mass Index (BMI) of 38.6, modestly heavier than he reported at the time of the presentence report interview.  Defense Exhibit A at 26. He has diabetes, hypertension, and sleep apnea, all known co-morbidities with being overweight.

### ARGUMENT

## A.     The First Step Act's Requirements for Compassionate Release.

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010).  It has long been recognized that finality is an important attribute of criminal judgments, and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion).  Consistent with that principle, Section 3582(c) provides that a court "may not modify a term of imprisonment once it has been imposed," except under three specified circumstances.  Sentence reduction is permitted only in limited circumstances, one of which is a motion under 18 U.S.C. § 3582(c)(1)(A).

As amended by the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A) now permits an inmate satisfying certain conditions to file a motion with the district court seeking "compassionate release."  Before such a motion can be filed, the statute provides that the defendant must either exhaust administrative review of the denial of a request made to the BOP, or wait until 30 days have passed after the request is made to the warden, whichever is earlier.  As relevant to the defendant's motion, the statute now reads:

> (c)  The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1)  in any case—
>
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all

Government's Response to Motion
For Compassionate Release - 5
*U.S. v. Locke*, CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

> (i) extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to draft the policy statement referenced in the statute in 28 U.S.C. § 994(f) which provides:

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

### 1.   USSG § 1B1.13, the Applicable Policy Statement, Defines "Extraordinary and Compelling Circumstances."

The policy statement referenced in 18 U.S.C. § 3582(c)(1)(A) and mandated by 28 U.S.C. § 994(f) is found at USSG § 1B1.13. As relevant here, it provides:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--

(1) (A) Extraordinary and compelling reasons warrant the reduction;

* * *

Government's Response to Motion
For Compassionate Release - 6
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

The Guideline application notes further define what constitutes "extraordinary and compelling reasons" to support a reduction in sentence. Application note 1 provides that extraordinary and compelling reasons exist under the following circumstances:

(A)    Medical Condition of the Defendant.—

(i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)    The defendant is—

(I)    suffering from a serious physical or medical condition,

(II)    suffering from a serious functional or cognitive impairment, or

(III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)    Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less

USSG § 1B1.13 cmt. n.1. The note also provides that extraordinary and compelling reasons may include certain described family circumstances, or other reasons as

Government's Response to Motion
For Compassionate Release - 7
*U.S. v. Locke*, CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    determined by the Director of BOP,[1]  and notes that "[t]he court is in a unique position to
2    determine whether the circumstances warrant a reduction (and, if so, the amount of
3    reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set
4    forth in this policy statement, such as the defendant's medical condition, the defendant's
5    family circumstances, and whether the defendant is a danger to the safety of any other
6    person or to the community."  USSG § 1B1.13 cmt. n.4.

7              **2.      *The Policy Statement at USSG § 1B1.13 Is Binding.***

8              Based on the text of § 3582(c)(1)(A), the policy statement referenced in
9    § 3582(c)(1), like that referenced in 18 U.S.C. § 3582(c)(2), *see* USSG § 1B1.10, is binding
10   on this Court and controls how this Court is to exercise discretion.  *Cf. Dillon v. United*
11   *States*, 560 U.S. 817, 827 (2010).  In *Dillon*, the Court addressed the identical language
12   contained in 18 U.S.C. § 3582(c)(2).  The Court held that based on this language, the
13   Commission's pertinent policy statement is binding on district courts and any limitations
14   contained in that Guideline is a limitation a district court's discretion to reduce sentences.
15   *See Dillon*, 560 U.S. at 826.

16             *Dillon* emphasized that a sentence reduction under Section 3582(c)(2) "represents a
17   congressional act of lenity intended to give prisoners the benefit of later enacted
18   adjustments to the judgments reflected in the Guidelines."     *Id.* at 828.   Section
19   3582(c)(1)(A), like the companion provision addressed in *Dillon*, also rests on a limited
20   act of Congressional lenity.  Both subsections follow the same prefatory language that
21   makes unassailably clear that a court may only "modify a term of imprisonment once it has
22   been imposed" under the limited circumstances set out in these two subsections.  Given the
23   parallel nature of the two statutory subsections, the only possible conclusion is that the
24   policy statement referenced in 3582(c)(1)(A) is also be considered binding.

25

26   _____

27       [1] BOP has adopted a program statement describing the procedures for implementing 18 U.S.C.
     § 3582(c)(1)(A) and what it considers "extraordinary and compelling reasons."  *See* Program Statement 5050.50
28   available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.  This document contains standards that are more
     extensive and slightly different from those stated in the Section 1B1.13 policy statement.  The relevant factors are all
     related to age, health of the inmate, spouse or family member, or consideration unique family circumstances.

Government's Response to Motion                                    UNITED STATES ATTORNEY
For Compassionate Release - 8                                     700 STEWART STREET, SUITE 5220
*U.S. v. Locke,* CR18-132RAJ                                      SEATTLE, WASHINGTON 98101
                                                                  (206) 553-7970

1  The fact that USSG § 1B1.13 has not been amended after enactment of the First

2  Step Act[2] does not alter that conclusion.  Although the First Step Act removed the Director

3  of the Bureau of Prisons as the gatekeeper, the Act did not otherwise change any of the

4  statutory standards for relief, or suggest that there should be a broader interpretation of

5  what constitutes an "extraordinary and compelling reason" beyond what is stated in the

6  policy statement.  Nor did Congress direct the Sentencing Commission to change or expand

7  this policy statement.  Rather, Congress simply made it possible for a defendant to file a

8  motion rather than retaining the Bureau of Prisons as the sole entity entitled to seek relief.

9  *See, United States v. Ebbers,* 2020 WL 91399, *4 (S.D.N.Y. Jan. 8, 2020) ("Congress in

10  fact only expanded access to the courts; it did not change the standard.").

11  Therefore, as numerous courts have found including a judge of this district, this policy

12  statement is still binding and must guide this Court's determination of whether the facts that the

13  defendant has presented constitute "extraordinary and compelling reasons" and what situations

14  other than the defendant's one medical condition might constitute such a reason.  *See, e.g, United*

15  *States v. Derico Fuller*, 17-CR-324-JLR, 2020 WL 2557337 (W.D. WA. May 20, 2020); *United*

16  *States v. Garcia*, No. 4:05-cr-40098, 2020 WL 2039227 (C.D. Ill. Apr. 28, 2020); *United States*

17  *v. Ebbers*, No. 02-CR-1144-3, 2020 WL 91399, *4 (S.D.N.Y. Jan. 8, 2020); *United States v.*

18  *Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019); *United States*

19  *v. Washington*, No. 5:13-020, 2019 WL 6220984 (E.D. Ky. Nov. 21, 2019).[3]

20

21

---

22  [2] Because there is no quorum on the Sentencing Commission, an amendment cannot be proposed.  However, given

23  the fact that the statutory standard was not changed, there is little reason to amend the substance of this policy.  All
that is needed is to delete reference to the Director of the Bureau of Prisons.

24  [3] The government acknowledges that some courts have reached a different conclusion. *See*, *e.g.*, *United States*
*v. Rodriguez*, No. 17-cr-00021, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) (but the claim was exclusively

25  based on medical condition); *United States v. Schmitt*, No. CR12-4076, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8,
2020) (same); *United States v. Bucci*, No. 04-10194, 2019 WL 5075964, at *1 (D. Mass. Sept. 16, 2019) (relief granted

26  as defendant is sole available caregiver for ailing mother); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL
2716505, at *6 (M.D.N.C. June 28, 2019) (relief granted on the basis of invasive cancer); *United States v. Cantu*, No.

27  1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019).  But the First Step Act did not alter the statutory
standard for relief, suggest that there should be a broader interpretation of what constitutes an "extraordinary and

28  compelling reason" beyond what is in the policy statement, or direct a change to this policy statement.  Rather,
Congress simply made it possible for a defendant to file a motion rather than having the Bureau of Prisons be the

Government's Response to Motion
For Compassionate Release - 9
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

And even those courts that have concluded otherwise have found this policy statement nonetheless to provide helpful guidance regarding what constitutes an extraordinary and compelling reason to disturb the finality of a sentence. *See, e.g., United States v. Rivernider*, 2019 WL 3816671, at *2 (D. Conn. Aug. 14, 2019); *United States v. Fox*, 2019 WL 3046086, *3 (D. Me. July 11, 2019). This is particularly true where Congress chose not to disturb this policy statement or expand the understanding of what constitutes extraordinary and compelling circumstances when it amended this provision in the First Step Act.

Thus, before this Court may reduce the defendant's sentence, applying the guidance in USSG § 1B1.13, it first must determine whether the reasons the defendant has provided are extraordinary and compelling. And if the court concludes such a reason or reasons have been provided, this Court must then consider whether a reduction in sentence is appropriate in light of the factors in 18 U.S.C. § 3553(a) and the danger that the defendant might continue to present to another person or the community.

**B.  Defendant Has Not Met the Standard for a Reduction of Sentence.**

The Defendant does not claim that he is presently suffering from any of the medical conditions identified in the application note to USSG 1B1.13. He does not have a "terminal illness." Nor does he claim to be suffering from a "serious physical or medical condition" that substantially diminishes his ability to care for himself and from which he is not expected to recover.

Instead, the defendant contends that the mere existence of the COVID-19 pandemic, and the theoretical possibility that he may be infected by the virus, and the presence of certain chronic conditions related to his obesity, is an extraordinary and compelling reason to immediately release him from custody. It is not.

To be eligible for a district court's discretionary consideration of a reduced sentence under this provision, the Defendant bears the burden to show "extraordinary and

---

gatekeeper of such motions. *See United States v. Ebbers*, 2020 WL 91399, *4 (S.D.N.Y. Jan. 8, 2020) ("Congress in fact only expanded access to the courts; it did not change the standard.").

Government's Response to Motion
For Compassionate Release - 10
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

compelling reasons" that meet the high bar set by Congress and the Sentencing Commission for compassionate release to be granted. *See Riley v. United States*, No. 19-CR-1522 JLR, 2020 WL 1819838 at *7 (W.D. Wash. Apr. 10, 2020); *United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that defendant bears the burden of establishing entitlement to sentencing reduction, citing *United States v. Sprague*, 135 F.3d 1301, 1306-07 (9th Cir. 1998)). "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from . . . chronic conditions that [he] is not expected to recover from." In general, chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020) (rejecting a claim for compassionate release from a defendant suffering from severe back injuries and epilepsy); *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) ("[A] compassionate release . . . is an extraordinary and rare event." (citation omitted)). Rather, compassionate release should be for extraordinary circumstances. *See United States v. Johns*, 2019 WL 2646663, at *2–3 (D. Ariz. June 27, 2019) (granting reduction after 23 years of imprisonment for 81-year-old defendant with multiple serious medical conditions, including "severe heart disease" and a stroke from which he was not likely to recover, who had substantially diminished ability to provide self-care within the BOP).

This reluctance to view compassionate release too expansively is grounded in a concern that it could yield significant sentencing disparities. *Ebbers*, 2020 WL 91399, at *6. Compassionate release is not a tool to "correct" a judgment. *Id.* Courts have generally recognized that "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where detention would otherwise be warranted." *See, e.g., United States v. Wages*, 271 F. App'x 726, 728 (10th Cir. 2008) (citing various pre-trial detention cases).

Government's Response to Motion
For Compassionate Release - 11
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       **1.     COVID-19 Alone Does Not Create an Extraordinary and Compelling**

2                    **Reason.**

3           The defendant's case is not one of those rare cases meriting compassionate release.

4 As extraordinary and compelling reasons, he simply points to his medical conditions and

5 relies on the possibility that he may become infected with COVID-19 while at FDC-SeaTac

6 to justify release.  But despite the Seattle area being an early epicenter of the pandemic, to

7 date no inmates or staff at FDC SeaTac has tested positive for COVID-19.  Indeed, as

8 discussed below, BOP has taken and is taking extraordinary steps to prevent the

9 introduction of the virus into this and other facilities.  As of this writing FDC Sea-Tac is

10 administering rapid tests to any new detainees to ensure that no virus enters the facility.

11 The latest status report from BOP as to the measures being taken at FDC SeaTac are

12 attached here to as Exhibit 1.

13           Defendant's worry is understandable.  However, "[g]eneral concerns about possible

14 exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons

15 for a reduction in sentence set forth in the Sentencing Commission's policy statement on

16 compassionate release, U.S.S.G. §1B1.13." *United States v. Eberhart*, 2020 WL 1450745

17 at *2.  As courts have noted, a generalized risk of contracting COVID-19 would apply to

18 everyone in confinement and do not constitute extraordinary and compelling reasons.  *See,*

19 *e.g., United States v. Fuentes*, 2020 WL 1937398 (E.D. Cal. April 22, 2020); *United States*

20 *v. Stanard,* 2020 WL 2219478 (W.D. Wash., May 7, 2020); *United States v. Espinal*, 2020

21 WL 2092484 (E.D. N.Y. May 1, 2020); *United States v. Allegra*, No. 15 CR 243, DN 232

22 at 7 (N.D. Ill. Apr. 13, 2020).  Although he seeks to portray the Bureau of Prisons response

23 as inadequate, the facts show that BOP is doing an excellent job in managing the pandemic

24 at FDC SeaTac.  The speculative possibility of COVID-19, standing alone, simply does

25 not present the type of extraordinary and compelling reason to release early from his

26 sentence.

27

28

Government's Response to Motion
For Compassionate Release - 12
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**2.     Defendant's Documented Medical Conditions Do Not Rise to the Level of an Extraordinary Reason**

The government acknowledges that Defendant has some risk factors should he be infected with the coronavirus.[4]  But their magnitude does not match his claims.

- Defendant at age 45 is far too young to fit in one of the most prominent and important risk categories.  It is well-documented that people 65 and older are at greater risk from the virus, but Defendant is a good two decades away from that threshold.

- Defendant contends his "severe" obesity means that he is extraordinarily vulnerable to the virus.  But he is not sufficiently obese to qualify as higher risk.  The Centers for Disease Control and Prevention (CDC) states that people with "severe" obesity qualify, but severe obesity is defined as a BMI of 40 or higher.   https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#severe-obesity.  Defendant is under that cutoff.

- Defendant does have diabetes, which the CDC does list as a risk factor for more serious consequences from COVID-19.  *See* link above.  Defendant claims that the FDC is not adequately managing his diabetes, but it is unclear whether this is actually true from a review of the medical records provided by the BOP that are attached to the defendant's motion.  Indeed, much of the evidence to that effect comes from Defendant's self-report.  Further, it is unknown to what extent the defendant is compliant with any treatment, as successful management of diabetes requires the cooperation and vigilance of the patient.   Indeed, the records submitted by the defense showed the defendant was struggling with managing his own medical issues prior to

---

[4] The Relevant Risk factors are found at the Center for Disease Control and Prevention's website, "Coronavirus Disease 2019 (Covid-2019), People Who Are At Higher Risk for Severe Illness" https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html

Government's Response to Motion
For Compassionate Release - 13
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

sentencing. *See*, Defense Motion at page 5, line 3. Thus, there is no evidence that Defendant would do a better job of managing his diabetes should he be released from custody;

- Defendant appears to have sleep apnea, and claims this makes him more vulnerable to the virus. However, sleep apnea is not identified by the CDC as a risk factor with the virus, and Defendant does not point to any reliable medical literature supporting this proposition.[5]

In any event, regardless of Defendant's litany of medical problems making him supposedly more vulnerable to a poor outcome *if* he contracts COVID-19, the burden is on the Defendant to show that he meets the standard as an extraordinary and compelling reason under all of the circumstances. Given his age, and the current facts at FDC SeaTac, the defendant has not bet this burden.

Put another way, even if the defendant is at some particular increased medical risk for COVID-19, he must still establish that he would qualify for immediate release under § 3582. Under the Guidelines, a defendant must establish he is presently suffering from either a terminal illness or a "serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, cmt. n.1. Here, Defendant has not shown he is at any particular high risk for contracting the virus, given BOP's effective management of the problem at the FDC.

Moreover, BOP is already acting to remove particularly vulnerable individuals to home confinement using its authorities under 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541(g). Because of the COVID-19 crisis, the Attorney General issued directives to BOP on March 26 and April 3, 2020, to begin reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, to determine

---

[5] Severe asthma and other chronic lung diseases are a risk factor – but defendant does not have asthma. *See* Defense Exhibit A at page 41.

Government's Response to Motion
For Compassionate Release - 14
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   which inmates would be suitable for release to home detention to protect the health and
2   safety of both inmates in BOP institutions and BOP personnel. *See*
3   https://dojnet.doj.gov/usao/eousa/ole/tables/misc/aghome.pdf                          and
4   https://dojnet.doj.gov/usao/eousa/ole/tables/misc/agCOVID2.pdf.  Further, the BOP was
5   given additional authority under Section 12003(b)(2) of the Coronavirus Aid, Relief, and
6   Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020,
7   to lengthen the maximum amount of time for home confinement under first sentence of
8   § 3624(c)(2).

9       On April 3, 2020, the Attorney General has made the CARES Act findings
10  necessary to give BOP the authority to implement these new standards for inmates housed
11  at       the       most       affected       BOP       institutions.       *See*
12  https://www.justice.gov/file/1266661/download.  Based on these directives, as of May 20,
13  2020, some 2932 inmates have been transferred to home detention. *See*
14  https://www.bop.gov/coronavirus/.

15      Consistent with preexisting Pandemic Influenza Plan, BOP began planning for
16  potential coronavirus transmissions in January 2020 by establishing a working group to
17  develop policies in consultation with subject-matter experts in the CDC and using guidance
18  from the World Health Organization.  Phase two of its plan was implemented on March
19  13, 2020.  This included  many preventive and mitigation measures, including screening
20  incoming inmates; regular screening of staff; liming contractor visits to essential services;
21  suspending attorney, social, and volunteer visits; limiting inmate movements between
22  facilities; and taking additional steps to modify operations to maximize social distancing
23  such as staggering times for meals and recreation.

24      Since then, the Bureau of Prisons has serially escalated its response. The Phase 3
25  plan was put into place on March 18, 2020, requiring that all cleaning, sanitation, and
26  medical supplies be inventoried and stocked. This was followed by the Phase 4 and the
27  Phase 5 plans, which instituted a nationwide lockdown on April 1, 2020, securing inmates
28  to their assigned quarters for a least fourteen days to decrease the spread of the virus, and

Government's Response to Motion
For Compassionate Release - 15
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  significantly         decreasing         inmate         movement.         *See*

2  https://www.bop.gov/resources/news/20200331_COVID19_action_plan_5.jsp   (visited

3  May 15, 2020). These requirements have now been extended in Phase 6 and 7.   And as

4  noted above, BOP has also significantly increased its testing.  All of these measures reduce

5  the risk to the defendant at FDC Sea-Tac.

6   ### 3.   The § 3553(a) Factors Don't Support the Defendant's Release and the Defendant Has Failed to Establish He is No Longer a Danger.

7

8  As noted above, defendant has not presented "extraordinary and compelling"

9  reasons to reduce his sentence.  The mere fear that he may contract COVID-19 at a secure

10  facility where no one has been so infected is simply insufficient.  Balanced against that

11  understandable but speculative concern are the very real factors set out in § 3553(a),

12  including: the need to reflect the seriousness of the offense and to impose just punishment;

13  the need to protect the public; and the need to avoid unwarranted sentencing disparities.

14  Those factors have not altered since the defendant's original sentencing, and call for this

15  motion should be denied.

16  First, there can be no doubt that this was a serious offense.  Defendant was selling

17  multiple types of controlled substances as part of the larger conspiracy.  More important,

18  he engaged in this drug dealing while armed.  That last fact is not subject to debate or

19  dispute.   Over and above the facts admitted in the plea agreement, Defendant was

20  intercepted on the wiretap discussing firearms, and was physically carrying a firearm

21  (together with distribution amounts of drugs) at the time of his arrest.  These facts called

22  for a significant sentence.  Obviously, releasing Defendant a mere five or six months into

23  a 62-month sentence will no longer reflect the seriousness of the offense or constitute

24  sufficient punishment.

25  Second, prematurely terminating the custodial sentence will not protect the public.

26  Even if Defendant had set forth sufficient grounds for a compassionate release – which he

27  did not – the need to protect the public would override those reasons.  This Court may not

28  reduce defendant's sentence unless it finds that "the defendant is not a danger to the safety

Government's Response to Motion
For Compassionate Release - 16
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  USSG §

2   1B1.13; *see also United States v. Gotti,* No. 02-cr-743-CM, 2020 WL 497987 (S.D.N.Y.

3   020) (finding that even if medically eligible, release was inappropriate because defendant

4   poses a continuing danger to the public).  Indeed, numerous courts have denied release to

5   defendants who have made similar, or more significant showings that that made by this

6   defendant based on the danger these individuals present to the community.  *See, e.g.,*

7   *United States v. Stanard,* 2020 WL 2219478, at *4 (W.D. Wash. May 7, 2020) (defendant's

8   "criminal record reflects multiple convictions for crimes that involve violence or the threat

9   of violence); *United States v. Smith,* 2020 WL 1903160 (D. Conn. Apr. 17, 2020) (denied

10  notwithstanding heart condition that puts him at greater risk of COVID-19, upon

11  consideration of 3553(a) factors, including the nature of child sex offense);  *United States

12  v. Miranda,* 2020 WL 2124604 (D. Conn. May 5, 2020) (55-year-old has diabetes; has

13  served 54 months of 74-month term for drug crime; denied in light of history of drug crimes

14  and threatened violence);  *United States v. Steinger,* 2020 WL 1865989 (S.D. Fla. Apr. 14,

15  2020) (request, if granted, would result in a 12-year reduction of sentence, which the court

16  finds to be inappropriate given the severity of his offenses, involving an $800 million fraud

17  with 30,000 victims); *United States v. Walter,* 2020 WL 1892063 (S.D.N.Y. Apr. 16, 2020)

18  (denied due to violent acts as gang member, notwithstanding risk of COVID-19 as gunshot

19  victim); *United States v. Johnson, 2020 WL 2142926* (S.D.N.Y. May 5, 2020) (35-year-old

20  with chronic asthma; that is not extraordinary; also denied because the defendant

21  "committed an incredibly serious and violent offense as a gang member, involving the

22  possession and distribution of a substantial quantity of drugs and the possession of a

23  dangerous weapon that was used to [commit a] murder");

24      Here, the defendant has a lengthy criminal history that included prior convictions

25  for drug trafficking, assault, and other serious crimes.  The evidence established that

26  despite these numerous convictions, he has continued to deal multiple types of controlled

27  substances while armed.  The conduct in this case, together with his criminal history, shows

28  that the defendant was and is a danger to the public if released.  Nothing about the

Government's Response to Motion
For Compassionate Release - 17
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

COVID-19 pandemic reduces the defendant's danger to others.  Indeed, Defendant's proposed release right now presents a danger to the community because first responders are focused on mitigating the effects of the COVID-19 outbreak, so they are less equipped to prevent and respond to wrongdoing.

In the current climate, irresponsible social habits can also endanger the health of the community.  The State of Washington is currently under an order to stay at home except to do essential tasks.  In order to be effective, people must follow the rules and voluntarily comply.  Such rules, though enforced by peace officers, rely largely on voluntary obedience.  A person who ignores such admonitions and rules could increase infection rates, leading to severe illness and death. The defendant thus poses both a high risk of reoffending upon release from prison and a high risk of spreading the coronavirus through lack of compliance with state and local guidance intended to protect the safety of the entire community.

Last, but not least, prematurely terminating Defendant's sentence will give rise to unwarranted sentencing disparities.  This Court sentenced approximately 40 defendants in this matter.  In doing so, the Court carefully balanced the relative culpability of the various conspirators, their criminal histories where applicable, and paid particular attention to whether they were armed or not during the offense.  It then imposed sentences that the Court determined were proportionate and appropriate.  Prematurely and unnecessarily releasing this defendant, based merely on a hypothetical concern that he might contract COVID-19 at a facility where no such infections have been observed, and when BOP is taking extraordinary steps to keep it that way, will result in unwarranted disparities.

## CONCLUSION

There have been no cases of COVID-19 at FDC-SeaTac where Defendant is currently housed.  The BOP is taking every precaution to try and keep it that way.  The mere possibility that Defendant might be exposed to the virus despite those efforts is neither an extraordinary nor compelling circumstance permitting release.  Nor is it

Government's Response to Motion
For Compassionate Release - 18
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  sufficient to justify Defendant's release, given his criminal history and the nature of the

2  offense.  The motion should therefore be denied.

3          Dated this 21st day of May, 2020.

4                                              Respectfully submitted,

5
                                               BRIAN T. MORAN
6                                              UNITED STATES ATTORNEY

7                                              /s/ Vincent T. Lombardi
8                                              VINCENT T. LOMBARDI
                                               Assistant United States Attorney
9                                              United States Attorney's Office
10                                             700 Stewart Street, Suite 5220
                                               Seattle, Washington  98101-1271
11                                             Phone:  206-553-7970
12                                             E-mail:  vince.lombardi@usdoj.gov

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Government's Response to Motion
For Compassionate Release - 19
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

 *s/ John M. Price*
JOHN M. PRICE
Paralegal Specialist
United States Attorney's Office
700 Stewart, Suite 5220
Seattle, Washington 98101-1271
Phone:  206-553-7970
Email: john.price2@usdoj.gov

Government's Response to Motion
For Compassionate Release - 20
*U.S. v. Locke,* CR18-132RAJ

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970