1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>EDWARD DEANDRE LOCKE,<br><br>Defendant. | NO.  CR18-0132 RAJ<br><br><br>ORDER ON DEFENDANT'S MOTION<br>FOR COMPASSIONATE RELEASE |

16

17

18

19

20

21

22

23

24

25

26

27

28

## I. BACKGROUND

This matter comes before the Court on Defendant Edward Locke's motion for compassionate release.  Dkt. 774.  Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

Following a lengthy investigation and indictment involving several other defendants, Edward Locke was charged with drug related offenses.  On May 29, 2019, he pled guilty to Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and Carrying a Firearm During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C § 924 (c)(1)(A).  Dkt. 507.

On November 22, 2019, the Court sentenced Mr. Locke to 62 months of incarceration, to be followed by five years of supervised release.  Dkt. 708.  The Court

ORDER  - 1

1  ordered his self-surrender date to be extended past December 29, 2019.  He is currently

2  housed at FDC Sea-Tac.  He is scheduled to be released on May 12, 2024.  While the

3  record is unclear when Mr. Locke began serving his sentence, he has served no more than

4  six months of his 62-month sentence.

5         On May 21, 2020, Mr. Locke filed the instant motion requesting compassionate

6  release, a sentence reduction to time served, twelve months of home confinement,

7  followed by a five-year term of supervised release.  He contends his circumstances put

8  him at a higher risk to suffer serious complications or even death if infected with

9  COVID-19.  Dkt. 774.

10        Specifically, Mr. Locke contends he suffers from a "constellation" of medical

11  problems that elevate his risk for severe complications from COVID-19.  His list of

12  medical conditions includes, but is not limited to, severe obesity, chronic kidney disease,

13  diabetes, severe obstructive sleep apnea, shortness of breath, and recurrent chest pain.

14  Dkt. 774, p. 4.

15        The Government has responded that as of the day of its response (May 21, 2020)

16  there were no confirmed cases of COVID-19 at FDC Sea-Tac.  The Government

17  contends that Mr. Locke's fear of contracting COVID-19 is wholly speculative and that

18  the Bureau of Prisons (BOP) is taking extraordinary steps to maintain the FDC Sea-Tac

19  COVID free, including rapid testing of all prospective detainees at the facility.  Dkt. 787.

20  The Government concedes Mr. Locke does have various health issues, but contends they

21  all appear to be manageable.

22        The Government further contends that Mr. Locke's early release after just a few

23  months into his sentence is inconsistent with the factors set forth at 18 U.S.C. § 3553

24  because it would no longer reflect the seriousness of the offense, impose just punishment,

25  protect the public, and would result in unwarranted sentencing disparity when compared

26  to other defendants.  Dkt. 787.

27  ///

28  ///

ORDER - 2

## II. DISCUSSION

### A.      Legal Standard for Compassionate Release

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." United States Sentencing Guidelines ("USSG") § 1B1.13.  The policy statement clarifies that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2) "the defendant is suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  USSG § 1B1.13 cmt. n.1.  The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take.  USSC § 1B1.13 cmt. n.4.

Mr. Locke's motion seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.  As amended, § 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release."  As relevant to Mr. Locke's motion, the statute now provides:

>  (c) Modification of an imposed term of imprisonment. --The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from

1
2
3
4
5
6
7
8
9

> the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

10
11
12
13
14
15
16

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.

17
18

**B.      Exhaustion of Administrative Remedies**

19
20
21

It is undisputed that Mr. Locke has met the exhaustion requirement.  He provided the Court with documentation clearly indicating he had sought compassionate release on April 18, 2020.  Dkt. 774, Ex. N.  The BOP denied his request on May 1, 2020.

22

**C.      Extraordinary and Compelling Circumstances.**

23
24
25

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. Locke's term of imprisonment.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13.

26
27
28

1   The policy statement referenced in § 3582(c)(1) was promulgated by the

2   Sentencing Commission pursuant to the authority Congress vested in it in 28 U.S.C.

3   § 994. That statute provides:

4   The Commission, in promulgating general policy statements regarding the
     sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall
5   describe what should be considered extraordinary and compelling reasons for
6   sentence reduction, including the criteria to be applied and a list of specific
     examples. Rehabilitation of the defendant alone shall not be considered an
7   extraordinary and compelling reason.

8   28 U.S.C. § 994(f).

9   Consistent with this statute, the applicable policy statement can be found at

10  Section 1B1.13 of the United States Sentencing Guidelines. That statement provides:

11  Upon motion of the Director of the Bureau of Prisons under 18 U.S.C.
12  § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may
     impose a term of supervised release with or without conditions that does not
13  exceed the unserved portion of the original term of imprisonment) if, after
14  considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they
15  are applicable, the court determines that--

16  (1)(A) Extraordinary and compelling reasons warrant the reduction…

17  (2) The defendant is not a danger to the safety of any other person or to the
     community, as provided in 18 U.S.C. 3142(g); and

18  (3) The defendant is not a danger to the safety of any other person or to the
19  community, as provided in 18 U.S.C. § 3142(g); and

20   (4) The reduction is consistent with this policy statement.

21  U.S.S.G. § 1B1.13 (2019).

22  In the commentary, the Commission goes on to explain what constitutes

23  "extraordinary and compelling reasons" to support a reduction in sentence.

24   Specifically, Application Note 1 provides that extraordinary and compelling reasons

25  exist if the defendant is suffering from a serious physical or medical condition…that

26  substantially diminishes the ability of the defendant to provide self-care within the

27

28

ORDER  - 5

1    environment of a correctional facility and from which he or she is not expected to

2    recover." U.S.S.G. § 1B1.13 cmt.n.1.

3          Mr. Locke argues that the potential for COVID-19 exists at FDC Sea-Tac.  The

4    Court does not intend to minimize the risks that COVID-19 poses in the federal prison

5    system, particularly for inmates like him with associated health concerns.  But as noted in

6    *United States v. Raja*, 954 F. 3rd 594 (3rd. Cir. 2020), the mere existence of COVID-19

7    in society and the possibility that it may spread to a prison alone cannot independently

8    justify compassionate release, especially considering BOP's statutory role, and its

9    extensive and professional efforts to curtail the virus's spread. *Id. at p. 596, citing covid-*

10   *19 Action Plan* (Mar. 13, 2020, 3:09 PM),

11   https:bop.gov/resources/news/20200313_covid-19.jsp.

12         Mr. Locke's motion presents facts, however, that far exceed the mere fear of

13   potential COVID-19.  His fear contention is supplemented with the various diagnoses of

14   his health:

15              1.    That he is an African American with a body mass index near or

16   above 40, thus satisfying the CDC's definition of severe obesity.  Dkt. 774.

17              2.    That he suffers from one of the most severe cases of sleep apnea that

18   one of his medical providers has ever seen.  Dkt. 774, p. 11.

19              3.    That he has a diagnosis of Type II diabetes which has been difficult

20   to control while he has been incarcerated and that BOP medical records confirm his

21   consistently elevated readings.  Dkt. 774, p. 14; *See also,* Declaration of Dr. Marc Stern,

22   M.D., Ex. G.

23              4.    That he has been diagnosed with chronic kidney disease (CKD) and

24   hypertension.  These two conditions, combined with the severity of his sleep apnea,

25   essentially feed off each other and worsen the condition.  Dkt. 774, p. 20.

26              5.    In addition to the foregoing, Mr. Locke has several other medical

27   concerns including recurring chest pain, chronic shortness of breath, spinal stenosis, gout,

28   and gastroesophageal reflux disease.  Dkt. 774, p. 20.

ORDER - 6

1
2
    6.    When describing his physical condition in the presentence report, the probation officer referenced the following:

> "According to Mr. Locke, he has been diagnosed with heart problems, kidney disease, gout, sleep apnea, hypertension, back pain, and diabetes. In 2016, Mr. Locke spent seven days in the hospital and was in a diabetic coma. He lost his vision for four months…Before his arrest in this matter, he underwent a heart procedure to place stints in his arteries and was in the final stages of testing regarding dialysis for kidney disease.

> Counsel provided medical documentation summarizing the defendant's prior medical issues to include acid reflux disease, anxiety, congestive heart failure, chronic kidney disease, coronary artery disease, depression, Diabetes type 2, controlled Diverticulitis, gout, Hyperlipidemia, hypertension, palpitations, panic attacks, post-traumatic stress disorder, sleep apnea, renal insufficiency, spinal stenosis, and he suffered a stroke in 2016. He previously underwent surgery for cardiac catheterization in 2017."

Dkt. 689, PSR ¶ 117.

Despite these conditions, the Government argues that Mr. Locke's arguments are ones of generalized fear and suggest his medical conditions do not constitute extraordinary and compelling reasons to warrant his release. The Government's response fails, however, to rebut the expert medical declarations, the medical records, it cites no opposing medical literature, and posits only argument that he does not face an elevated risk of contracting COVID-19. While the Government is not required to rebut every ailment noted by Mr. Locke, it fails to even address several medical conditions that elevate his risk, namely hypertension and chronic kidney disease.

When an inmate has health conditions that make them significantly more vulnerable to COVID-19, that likewise may constitute an extraordinary and compelling circumstance. *See e.g., United States v. Cosgrove,* Case No. CR15-0230-RSM, -F. Supp. 3rd-, 2020 WL 1875509 (W.D. Wash. April 15, 2020; *United States v. Dorsey,* Case No. CR16-0138-BLW-JCC, 2020WL 2562878 (W.D. Wash. May 19, 2020).

ORDER - 7

1    While some courts have held, as argued by the Government, that the Sentencing

2    Commission's policy statement on compassionate release remains controlling in the wake

3    of the First Step Act, this Court agrees with the position taken by numerous courts that

4    the "old policy statement provides helpful guidance, [but]…does not constrain [a court's]

5    independent assessment of whether 'extraordinary and compelling reasons' warrant a

6    sentence reduction under § 3852(c)(1)(A)." *United States v. Cosgrove, Id.; United States*

7    *v. Rodriguez*, 2020 WL 1627331, (E.D. Penn. Apr. 1, 2020; *United States v. Almontes,*

8    2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Haynes,* No. 93 CR1043

9    (RJD), 2020 WL 1941478 (E.D. N.Y. Apr. 22, 2020); and *United States v. Maumau,* No.

10   2:08-cr-00758-TC-11, 2020 WL 806121 (D. Utah, Feb. 18, 2020).

11   Mr. Locke has described numerous ongoing health issues, which have existed for

12   years.  These conditions are not merely self-diagnosed assessments of his health, but

13   rather, medically documented and verified conditions that appear to have only increased

14   in severity.  The Court appreciates the fact that there have been no confirmed cases of

15   COVID-19 at FDC-Sea-Tac.  However, this representation is made without the benefit of

16   mass testing or even the benefit of the numbers tested.  It appears we have no accurate

17   accounting of the presence or absence of the disease at the institution.  At best, no

18   confirmed case of COVID-19 of those tested is the ultimate conclusion to be reached

19   from this argument.  Consequently, the Court is uncertain if it is getting an accurate

20   picture of COVID-19 circumstances at FDC-Sea-Tac.

21   Thus, the widespread presence of the virus in the United States and Washington

22   State, combined with Mr. Locke's specific underlying conditions together put him at

23   significant risk for even more severe and life-threatening illness if he is exposed to

24   COVID-19 during his confinement.  Therefore, the Court finds that Mr. Locke's

25   vulnerability to COVID-19 is a serious medical condition that constitutes an

26   extraordinary and compelling circumstance warranting compassionate release under the

27   U.S. Sentencing Guidelines.

28

ORDER  - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.  Safety of Others**

The Court next turns to whether Mr. Locke presents a danger to the safety of any other person or to the community.  *See* U.S.S.G. §1B1.13(2).  In making this determination, the Court looks to the nature and circumstances of the underlying offense, the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community.  18 U.S.C. §3142(g).

Mr. Locke's underlying criminal conduct was serious and supported by substantial evidence.  He was heard on multiple occasions on a wiretap discussing his efforts to obtain and sell various illegal and dangerous drugs, including cocaine, heroin, oxycodone pills, and counterfeit opiate pills containing fentanyl.  He was heard on the wiretap discussing being armed in conjunction with his drug trafficking activities.  During the execution of a search warrant at his home, when he arrived he was carrying a loaded, stolen Glock pistol as well as cocaine, hydrocodone, oxycodone and fentanyl.  PSR ¶ 54.; Dkt. 507, ¶ 8(f).  Police found another loaded pistol — a Beretta — as well as ammunition, more oxycodone pills, cash, and several cell phones in his apartment.

Mr. Locke's criminal history reflects no criminal convictions since his 4th Degree Assault conviction in 2013, and many of his criminal history points were for driving offenses after 2007.  Dkt. 689, PSR.  The Court discounts the arrests referenced by the Government, as most of those matters were dismissed or the disposition unknown.  Dkt. 689, PSR ¶'s 92-102.

The concern for Mr. Locke being a danger to the community was significantly mitigated based upon his performance on pretrial supervision.  He was arrested on June 18, 2018. Dkt. 78.  He was released on bond ten days later and spent approximately eighteen months on pretrial supervision.  Dkt. 169.  He complied with all Court ordered conditions of release and maintained employment throughout that period.

1    Upon release, Mr. Locke will have the support of his family, and as described

2 above he has demonstrated that he will present minimal danger to any person in the

3 community. That he can be safely released is enhanced by the fact that the United States

4 Probation Office has approved of his release address where he will be living in a single-

5 occupancy apartment that is maintained by his church.  Dkt. 774, p. 7.

6    **E.  Other 18 U.S.C. § 3553(a) Factors**

7

8    In determining whether to grant Mr. Locke's compassionate release under 18

9 U.S.C. § 3582(c)(1)(A), the Court must consider relevant factors other than noted above

10 as set forth under 18 U.S.C. § 3553(a).  These factors include the need for the sentence

11 imposed, the kinds of sentences available, promoting respect for the law, providing just

12 punishment for the offense, avoiding unwarranted sentencing disparities, and providing

13 medical care in the most efficient manner.  18 U.S.C. § 3553(a)(2)(B, C, D); 18 U.S.C.

14 § 3582(c)(1)(A).

15    As discussed above, extraordinary and compelling reasons as defined by the

16 applicable U.S. Sentencing Guidelines policy statement exist and support Mr. Locke's

17 compassionate release.  While he has only served a small percentage of his original

18 sentence, he has demonstrated that extraordinary and compelling reasons exist due to the

19 combination of the COVID-19 pandemic and his extraordinary combination of health

20 conditions which warrant compassionate release.

21    **F.  Consistency with Policy Statement**

22    Last, the Court must determine whether Mr. Locke's compassionate release would

23 be consistent with the relevant policy statement.  *See* U.S.S.G. § 1B1.13(3).  The policy

24 requires the Court to make certain findings before granting an inmate's request for

25 compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  As set forth above, the

26 Court has made the necessary findings that extraordinary and compelling circumstances

27 exist, and that Mr. Locke's release would not pose a danger to any person or the

28 community.  *See supra* Sections, II D.  Therefore, the Court finds that Mr. Locke's

1  compassionate release is consistent with the applicable U.S. Sentencing Guidelines policy
2  statement.

3      **G.  Additional Term of Supervised Release**

4
5      18 U.S.C. § 3582(c)(1)(A) authorizes a reduction in sentence.  It also permits the
6  Court to "impose a term of probation or supervised release with or without conditions
7  that does not exceed the unserved portion of the original term of imprisonment."

8      The Court finds that an additional term of supervised release would adequately
9  address the seriousness of Mr. Locke's offense and the need for the original sentence
10 imposed while balancing the extraordinary and compelling circumstances that warrant his
11 compassionate release.  Therefore, the Court imposes an **additional** term of 24 months
12 and this additional term of supervised release shall include a condition of home
13 confinement.

14      Mr. Locke shall participate in the location monitoring program with Global
15 Positioning Satellite technology via mobile application during the additional 24 months
16 of supervised release.  In the event Mr. Locke does not have a cell phone, then Active
17 Positioning Satellite technology shall be used instead.  During this time Mr. Locke is
18 restricted to his residence except for employment, religious services, medical, legal
19 reasons, or as otherwise approved by the location monitoring specialist.  Mr. Locke shall
20 abide by all program requirements, and must contribute towards the costs of the services,
21 to the extent financially able, as determined by the location monitoring specialist.

22
23                    **III.  CONCLUSION**

24      For the foregoing reasons, Defendant Edward Locke's motion for compassionate
25 release is **GRANTED**.  The Court hereby **ORDERS** that Mr. Locke's term of
26 imprisonment be reduced to time served.  The Court **ORDERS** the Bureau of Prisons to
27 release Mr. Locke for placement according to the release plan approved by the United
28 States Probation Office where he will be supervised.  Mr. Locke is **ORDERED** to

1  contact the United States Probation Office within 24 hours of his release and follow its

2  instructions.

3       The Court **IMPOSES** an additional 24 months of supervised release, to be

4  followed by the previously-imposed period of five years of supervised release for a total

5  term of 84 months of supervised release.

6        The Court further **ORDERS** that the additional term of supervised release shall

7  include a condition of 24 months of home confinement with the conditions as set forth in

8  this Order.

9       DATED this 11th day of June, 2020.

10

11  _____

12  The Honorable Richard A. Jones
    United States District Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER  - 12